UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CRISTABEL DOMINGUEZ, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. H-09-1681 |
| § | |
| SAFETY NATIONAL CASUALTY § | |
| CORPORATION, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

**I. Introduction**

Pending before the Court is the plaintiffs', Miguel Aguirre and Cristabel Dominguez (collectively, "Dominguez"), motion to dismiss the defendants' counterclaims, claims for recoupment and/or set-off, and claims for attorneys' fees pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) (Docket Entry No. 58). Dominguez filed an appendix to this motion (Docket Entry No. 41), the defendants, AAA Bonding Agency, Inc. and Safety National Casualty Corporation (collectively "AAA"), submitted a response in opposition to this motion (Docket Entry No. 64) and Dominguez filed a reply in support of her motion (Docket Entry Nos. 66 & 67). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby denies Dominguez's motion.

**II. Factual Background**

The pertinent facts in this dispute are set forth in the Court's earlier memorandum opinion and order denying-in-part and granting-in-part AAA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 33). Subsequent to that opinion,

AAA filed counterclaims against Dominguez[1] (Docket Entry Nos. 50 & 53). Specifically, it asserted that Dominguez (and some members of the putative class) have breached their immigration appearance bond ("bond") contracts with AAA. Further, AAA asserts that Dominguez (and some members of the putative class) are obligated to indemnify AAA for costs associated with their bond contracts. Specifically, AAA cites to a provision in the bond contracts, which states that:

> The Indemnitor(s) will at all times indemnify, and keep indemnified, the Company/Surety, and hold and save it harmless from and against any and all damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, whether incurred under retainer or salary or otherwise, which it shall or may, at any time, sustain or incur by reason or in connection with furnishing any bond or undertaking. Pursuant to these terms, AAA is entitled to recover its attorneys fees, costs and expenses incurred in this litigation. AAA further reserves its rights to claim entitlement to reasonable and necessary costs and attorneys fees as otherwise allowed by law or statute.

**III. Contentions**

    **A.  The Plaintiff's Contentions**

Dominguez asserts that AAA's counterclaims should be dismissed because this Court does not have jurisdiction over these claims and AAA has failed to state a claim upon which relief can be granted. Initially, she argues that neither diversity nor supplemental jurisdiction is present in this case, and, to the extent that this Court might maintain supplemental jurisdiction, such jurisdiction should be declined. With regard to AAA's request for attorney's fees, Dominguez asserts that the contractual clause upon which this request is premised does not apply to the present situation.

---

[1] Please note that, while this opinion refers to "Dominguez" in the feminine singular for purposes of readability, "Dominguez" is hereinafter meant to encompass all plaintiffs, including members of the putative class.

### B. The Defendants' Contentions

AAA argues that its counterclaims should not be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). To this end, it states that its counterclaims are compulsory under Federal Rule of Civil Procedure 13(a) and that compulsory claims apply to absent members of a class action. Further, AAA maintains that its claims for attorney's fees should not be dismissed because it is asserting a reasonable interpretation of the clause upon which it premises these claims.

## IV. Standard of Review

### A. Legal Standard for Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence. *Stockman,* 138 F.3d at 151; *Cross Timbers Concerned Citizens v. Saginaw,* 991 F. Supp. 563, 566 (N.D. Tex. 1997).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, "a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In making its ruling, the district court

may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians,* 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). A defendant makes a "facial" jurisdictional attack on a plaintiff's complaint by simply filing a motion under Rule 12(b)(1). *Id.* In this instance, the court is merely required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true. *Id.* A "factual" attack, however, is made by providing affidavits, testimony and other evidentiary materials challenging the court's jurisdiction. *Id.* When a "factual" jurisdictional attack has been made by a defendant, the plaintiff is required to submit facts in support of the court's jurisdiction and bears the burden of proving by a preponderance of the evidence that the court, in fact, has subject matter jurisdiction. *Id.*

### B. Legal Standard for Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In essence, "the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001.) Under Rule

12(b)(6), a court will dismiss a complaint only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, [even with] the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations, footnote and emphasis omitted). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### V. Analysis & Discussion

#### A. Personal Jurisdiction

Dominguez proffers three arguments regarding personal jurisdiction in the present case: (1) "this Court lacks supplemental jurisdiction over the [counterclaims] because Plaintiffs' and Defendants' claims do not arise out of the same 'case or controversy' under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a);" (2) "the [counterclaims] do not meet the amount-in-controversy or the complete diversity requirements for diversity jurisdiction;" and (3) "even if the Court has supplemental jurisdiction over the [counterclaims], this Court should decline to exercise jurisdiction under 28 U.S.C. § 1367(c)." The Court finds that supplemental jurisdiction is proper in this case and that permissive declination of this jurisdiction is currently inappropriate. Accordingly, the Court does not address Dominguez's argument regarding diversity jurisdiction.

##### 1. Supplemental Jurisdiction

With regard to supplemental jurisdiction, 28 U.S.C. § 1367(a) provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Accordingly, "[t]he question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

On a related subject, Judge Daniel Knowles, III (Magistrate Judge, E.D. La.) has stated that:

> It is well-settled that a compulsory counterclaim under Fed. Rule Civ. P. 13(a) is within the ancillary/supplemental jurisdiction of the court because it necessarily arises out of the same transaction or occurrence as the original claim.[2]  The liberal test employed by the Fifth Circuit to determine whether counterclaims are compulsory is predicated on the premise that related disputes between parties should be settled in a single lawsuit.[3]

*Air Liquide Am., L.P. v. Process Serv. Corp.*, No. Civ. A. 02-3794, 2003 WL 22272190, at *5 (E.D. La. Oct. 1, 2003) (footnotes in original).  Therefore, if AAA's counterclaims are compulsory under Rule 13(a), this Court must exercise supplemental jurisdiction over them.

"[A] counterclaim is compulsory when there is any 'logical relationship' between the claim and the counterclaim." *Incas and Monterey Printing and Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 964 (5th Cir. 1984) (quoting *Plant v. Blazer Fin. Servs.*, 598 F.2d 1357 (5th Cir. 1979)); *In re Eldercare Props. Ltd.*, 568 F.3d 506, 518–19 (5th Cir. 2009).  The Fifth Circuit has further stated that:

> A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire

---

[2] *See Transitional Hospitals Corp. of Louisiana, Inc. v. DBL North American, Inc.*, 2002 WL 277767, *2 (E.D. La.) (Barbier, J) (citing *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234, 236 (5th Cir. 1988) and *Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970)).
[3] *See Alpha Insurance Corporation v. Word of Faith Ministries*, 139 F.R.D. 350, 352 (S.D. Miss. 1991) (citing *Plant v. Blazer Financial Services, Inc. of Ga*, 598 F.2d 1357, 1361 (5th Cir.), reh'g denied, 605 F.2d 555 (5th Cir. 1979).  *E.g., White v. Imperial Adjustment Corporation*, 2002 WL 1809094, *16 (E.D. La.) (Englehardt, J.) (citing *Plant v. Blazer*, *supra*).

> jurisdiction." Fed. R. Civ. P. 13(a). The test for whether a claim is compulsory is: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the claim is compulsory.

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautroniz, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996) (quoting *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992)). "When the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard . . . has been satisfied." *Linton v. Whitman*, No. 5:08-CV-00548-XR, 2009 WL 2060091, at *7 (W.D. Tex., July 9, 2009) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, 1410 (3d ed.1998)); *Cabiri v. Gov't of Ghana*, 165 F.3d 193, 198 (2nd Cir. 1999); *Chelsea House N. Apartments, LLC v. Blonder*, 223 F.R.D. 388, 391 (D. Md. 2004); *Amoco Oil Co. v. McMahon*, No. CIV. A. 98-1625, 1999 WL 116290, at *7 (E.D. Pa. Mar. 1, 1999) (unreported opinion). Accordingly, if AAA's counterclaims arise from the same contract as Dominguez's claims, the counterclaims are compulsory and this Court must exercise supplemental jurisdiction.

In her complaint, Dominguez asserted that AAA "breached [its contracts with the plaintiffs] by failing to file the [rate applications associated with these contracts] with the Texas [Department of Insurance.]" In its counterclaims, AAA alleged that:

> The agreements of Dominguez and certain members of the putative class have been breached by, among other things, the failure of the illegal alien to comply with their required obligation to appear before the Department of Homeland Security ("DHS"). As a result of those breaches, AAA has become responsible to the DHS for the penalty amount of the bond(s) at issue. That penalty amount, in each case, exceeds the amount being claimed by Dominguez and those certain members of the putative class.

Further, AAA argues that Dominguez is obligated to indemnify it for certain litigation expenses pursuant to the bond contract. As evidenced by the above references, both AAA and Dominguez have brought causes of action based on the same bond contract(s). Accordingly, under the caselaw set forth above, AAA's counterclaims are compulsory, and therefore, supplemental jurisdiction is appropriate. *See George v. Beneficial Fin. Co. of Dallas*, 81 F.R.D. 4, 6–8 (N.D. Tex. 1977).[4]

### 2. Discretionary Rejection of Supplemental Jurisdiction

Dominguez argues that, pursuant to § 1367(c)(2), "this Court should decline jurisdiction over Defendants' [counterclaims because these c]laims will inject into this case a wide array of factual issues unrelated to Plaintiffs' claims . . . . In addition, the [counterclaims] will require this Court to resolve numerous legal issues unrelated to Plaintiffs' claims . . . ." On this issue, § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ." With regard to this standard, Judge Ivan L.R. Lemelle (District Judge, E.D. La.) has stated that:

> A federal court will find substantial predominance when it appears that "a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. 1130.

---

[4] There is some support for the assertion that a claim against a prospective class member cannot be a compulsory counterclaim. *See Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*, 202 F.R.D. 484, 502 (S.D. Tex. 2001) (overruled on other grounds); *contra Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839-CIV-NESBITT, 1994 WL 912242, at *35 (S.D. Fla. Feb. 1, 1994). However, to the extent that the present counterclaims are not compulsory, these claims still fall within § 1367(a) for the same reasons that they were deemed to be compulsory counterclaims (because the initial claims and the counterclaims arise from a common nucleus of operative fact).

*United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F. Supp. 2d 658, 667 (E.D. La. 2008). Further, the Court takes note of Judge Jon O. Newman's (Circuit Judge, 2nd Cir.) analysis of permissive declination of supplemental jurisdiction over counterclaims against members of a potential class action. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215–16 (2nd Cir. 2004). Specifically, speaking with regard to a previous analysis by Chief Judge Frank H. Easterbrook (Circuit Judge, 7th Cir.), Judge Newman stated:

> In *Channell*, Judge Easterbrook canvassed the competing considerations bearing on whether the [§ 1367](c)(2) and (c)(4) factors might permit declination of supplemental jurisdiction over collection counterclaims interposed against a [class action] claim under a consumer protection statute. See *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 386–87 (7th Cir. 1996).] Acknowledging a district court's discretion, the Seventh Circuit ultimately remanded because "[a]rguments under § 1367(c) are addressed to the district court's discretion." *Id.* at 387. In *Channell*, however, the class had been certified, class members had been notified, and some had opted out. *Id.* at 384. In our case, a ruling on the class motion has not yet been made.
>
> Whether Ford Credit's counterclaims "predominate[ ]" over the Plaintiffs' claims and whether there are "exceptional circumstances" for declining jurisdiction cannot properly be determined until a decision has been made on the Plaintiffs' motion for class certification. Both the applicability of subsections 1367(c)(2) and (4), and the exercise of a district court's discretion in the event either or both are ruled applicable will be significantly influenced by the existence of a large class as sought by the Plaintiffs. The District Court's conclusions that it would be "unfair and inexpedient" to require out-of-state class members to litigate Ford's state law debt claims in New York, and that allowing the counterclaims might dissuade potential plaintiffs from joining the class, were therefore premature.[5]

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2nd Cir. 2004) (footnote in original).

---

[5] The District Court's assumption that plaintiffs' class would be certified, and its analysis of the state law counterclaims in light of that assumption, unduly weighted the subsection 1367(c) analysis in favor of the plaintiffs. Gibbs emphasizes that the question of "whether [supplemental] jurisdiction has been properly assumed is one which remains open throughout the litigation," and the analysis should be undertaken when the district court is best positioned to determine how the exercise of jurisdiction will affect the case as a whole. [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).] Thus, when pendent state law claims are asserted in the context of a putative class action, district courts should normally not dismiss the claims based solely on the problems that could arise if the class is eventually certified. *See, e.g., Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232 (D.N.J. 2003) (noting that "[a]lthough the potential remains for this litigation to reach a crossroads where the better course may be to decline supplemental jurisdiction over claims arising under the laws of the Subclass States, or some of them," there was no reason to dismiss the claims prior to certification).

Consistent with Judge Newman's analysis, the Court believes that a determination regarding whether supplemental jurisdiction should be declined must not be made "until a decision has been made on the Plaintiffs' motion for class certification." Therefore, the Court will not reject supplemental jurisdiction at this point. However, this subject may be revisited once further determinations regarding class certification have been made.

### B. Failure to State a Claim

With regard to AAA's counterclaims for attorney's fees, Dominguez asserts that this cause of action should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As described above, AAA's claims for attorney's fees are premised upon the following clause from the bond contract (the "indemnity clause"):

> The Indemnitor(s) will at all times indemnify, and keep indemnified, the Company/Surety, and hold and save it harmless from and against any and all damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, whether incurred under retainer or salary or otherwise, which it shall or may, at any time, sustain or incur by reason or in connection with furnishing any bond or undertaking.

With regard to this clause, AAA asserts that it "is entitled to recover its attorneys fees, costs and expenses incurred in this litigation." Dominguez proffers four arguments against AAA's position. As detailed below, the Court is not persuaded by these arguments.

### 1. General v. Specific Provisions

Dominguez first states that the *generalized* indemnity clause cannot be read to apply to the present lawsuit because *specific* terms in the clause refer solely to breaches of the bond contract by the customer (as opposed to breaches by AAA, as alleged here). Further, she states that because none of the specific clauses refer to breaches of the contract by AAA, it would be illogical to apply the indemnity clause in a lawsuit pertaining to a breach by AAA.

Dominguez premises her argument on the correct statement of law that "specific provisions clarify and control general ones." *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994). However, she misapplies this standard. The rule, when stated in full, holds that "*[t]o the extent of any conflict*, specific provisions control over more general ones." *Grynberg v. Grey Wolf Drilling Co., L.P.*, 296 S.W.3d 132, 137 (Tex.App.—Houston [14th Dist.] 2009, no pet.) (citing *Forbau*, 876 S.W.2d at 133–34) (emphasis added). Dominguez does not cite to any contradiction between general and specific clauses in the bond contract. Accordingly, her argument does not follow from the rule it is premised upon, and dismissal is improper based on this argument.

### 2. Broad Construction and Reasonability

Dominguez argues that if the indemnity clause is interpreted to apply to her suit against AAA, it would require payment of AAA's legal fees *regardless of who is victorious*. She maintains that such a broad construction of this clause is improper because it would lead to an unreasonable interpretation of the clause.

AAA agrees that such a fantastically broad interpretation of the indemnity agreement would be illogical. Accordingly, AAA requests that "if they are the prevailing parties in this litigation, they be awarded their attorneys fees." Premised upon this contention, the Court believes that neither party is asserting an illogical interpretation of the indemnity agreement that might warrant dismissal of a claim (as asserted by Dominguez).

### 3. Indemnification and Logical Constructions

Dominguez argues that, if the indemnity agreement is read to apply to Dominguez's lawsuit, a literal reading of the clause (requiring indemnification for "damages, loss, costs, charges and expenses of whatsoever kind or nature") would require Dominguez to indemnify

AAA for any damages that AAA was required to pay to Dominguez.  She reasons that such an interpretation is illogical and therefore, must be incorrect.

As described above, AAA agrees that such a broad interpretation of the indemnity agreement would be illogical.  Accordingly, consistent with the discussion in the last subsection, dismissal of a claim on this grounds is improper.

### 4. Fee-Shifting Provisions v. Indemnity Agreements

In her fourth argument, Dominguez asserts that the indemnity clause is meant to shift expenses arising in proceedings between AAA and a third party, and if AAA intended to include a fee-shifting provision (applying to proceedings between AAA and Dominguez) in its contract, it should have expressly stated as such.  Dominguez has failed to proffer any specific evidence in support of her assertion that the indemnity provision "clearly contemplates that the 'expenses' Defendants may incur will arise in a proceeding other than a proceeding between the Customer and the Defendants."  Moreover, the dictionary definition of "indemnity" does not require an interpretation that excludes reimbursement for expenditures associated with litigation between the parties to a contract that includes an indemnification agreement.  *See Black's Law Dictionary* 837 (9th ed. 2009) (defining "indemnify" to mean "1. To reimburse (another) for a loss suffered because of a third party's or one's own act or default. 2. To promise to reimburse (another) for such a loss. 3. To give (another) security against such a loss.").  Accordingly, dismissal is improper on these grounds.

### VI. Conclusion

Based on the preceding discussion, the Court hereby DENIES Dominguez's motion to dismiss.[6]

It is so **ORDERED**.

SIGNED at Houston, Texas this 23rd day of February, 2010.

_____

Kenneth M. Hoyt
United States District Judge

---

[6] Any requested relief not expressly granted herein is denied.